Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Jacob Scheibe

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB SCHEIBE, *individually and on behalf of all those similarly situated*, ) ) ) | |
| Plaintiff, ) | No. _____ |
| ) | |
| *v.* ) | **CLASS ACTION COMPLAINT** |
| ) | |
| DRINK NECTAR, INC. dba Nectar Hydration, *a Delaware corporation,* ) ) ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) ) ) | |

Jacob Scheibe ("Plaintiff"), individually and on behalf of all others similarly situated throughout the United States, by and through undersigned counsel, hereby brings this action against Drink Nectar, Inc. dba Nectar Hydration ("Nectar"), alleging that its Nectar Essential Daily Hydration stick packs, wild berry, watermelon, strawberry lemonade, and cherry pomegranate flavors ("the Products") which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they contain artificial flavoring, and upon information and belief and investigation of counsel alleges as follows:

**PARTIES**

1.      Plaintiff Jacob Scheibe is and at all times relevant was a citizen of the state of California, domiciled in San Diego, California.

2.      Defendant Drink Nectar, Inc. dba Nectar Hydration is a Delaware corporation with its principal place of business at 2745 Laguna Street in San Franciso, California, as shown on its website at https://drinknectar.co/pages/contact-us (last viewed September 13, 2023):



3.      On information and belief all decisions regarding formulation and labelling of the Products are made at this principal place of business.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

5.      Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

6.      The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

7. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

8. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this district.

9. In addition, Defendant has substantial contacts with this district including but not limited to sales of the Products directly to commercial and individual consumers located in this district; shipping the Products to commercial and individual consumers in this district; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. The losses of some Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

### A.     Consumers Pay A Premium for "Clean Labels."

15.     Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

16.     For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

17.     This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

18.     Scheibe viewed and purchased a variety pack that included the relevant flavors of the Products from Amazon.com on or about November 29, 2022, Order No. 111-8021162-5873802.

19.     Scheibe is a student who attempts to eat "clean." He carefully reviews food product labels, including the Products' label, to understand the characteristics of the products he consumes, and he prefers to consume only products that contain all-natural ingredients and flavorings.

**B.      Defendant's Use of Synthetic Flavorings and Deceptive Labels.**

20.     Defendant Nectar formulates, manufactures, and sells *inter alia* "stick packs" of hydration powders under the brand name Nectar Hydration.

21.     The front label (or "principal display panel") of the Products state that the Products are "All Natural":



22.     Likewise, the back label of the Products states that they contain "no artificial ingredients":



23.    Other advertising materials associated with the Products amplify these labelling claims. For example, the Amazon.com web page that Plaintiff viewed before making his purchase uses depictions of fruits to associate the Products with the characterizing fruit flavorings:

 

CLASS ACTION COMPLAINT

24.    The depictions of fruits are juxtaposed with claims that the Products are "All Natural," "clean," and "flavored with real Organic Fruit," further cementing in the reasonable consumer's mind the labelling claim that the Products are "All Natural" and contain "no artificial ingredients":



25.    These labelling and advertising claims are false. The Products are flavored using an artificial flavoring, DL malic acid, that is derived from petrochemicals.

26.    While there is a naturally occurring form of malic acid, it is extremely expensive to formulate in large quantities and is almost never used in mass-produced food products. Instead, testing conducted on January 10, 2023 by an independent third-party laboratory of the Products purchased by Plaintiff, confirmed the presence of the "D" isomer of malic acid in the Products in substantial amounts—in some cases exceeding more than 10 of every 100 grams of the Products. This means that the malic acid that Defendant uses in these Products is DL malic acid, a synthetic substance derived from petrochemicals.[1] Further, at those concentrations, there

---

[1] DL malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

is no plausible argument that the DL malic acid used in these Products has a purpose other than flavoring. The isomer testing method employed in this case is an industry standard method for identifying the use of DL malic acid.

27.     DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

28.     Federal regulations note explicitly that "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

29.     Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The relative sweetness or tartness of a fruit flavor is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as citric and malic acid.

30.     The quality and consumer acceptability of fruit flavors is based on their perceived sweetness and tartness, which in turn is driven by the ratio between sugars and acids. Berries, watermelons, cherries, and other fruits have their own natural ratio of sugars and acids.

31.     The malic acid used in the Products is used to create, simulate, and/or reinforce the fruit flavors stated on the labels, also known as the "characterizing flavors." However, Defendant pretends otherwise, conflating natural and artificial flavorings, misbranding the Products and deceiving consumers.

**C.     Requirements for Labelling**

32.     Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), which are independently enacted pursuant to the Sherman Law (*see* Cal. Health & Saf. Code § 109875, *et seq.*) as substantive requirements of California law, require that a food's

label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

33.   Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

34.   Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

35.   Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

36.   Here, the Products' labels state the characterizing flavors ("berry," "cherry pomegranate," and the like).

37.   If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

38.   A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer

acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

39.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

40.     California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875, *et seq*., enacts as enforceable provisions of state law all food flavoring and additive regulations of the FDCA.

41.     By changing the ratio between sugars and acids that is naturally found in berries, the DL malic acid used in the Products reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included.

42.     DL malic acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source. The Products therefore contain artificial flavorings.

43.     Because the Products contain artificial flavoring, California law requires the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

44.     The Products have none of the required disclosures regarding the use of artificial flavors.

45.     Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

46.     Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based

on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

47.     Plaintiff reviewed the Amazon.com page for the Products and the label on the Products prior to his purchase. He reviewed the natural flavoring claims being made on the labels and in that advertising. Consumers including Plaintiff who viewed the Products' labels and advertising reasonably understood Defendant's "All Natural" and "no artificial ingredients" label claims, the associated advertising claims, and Nectar's failure to disclose the use of artificially derived malic acid, to mean that the Products contain only natural flavorings. These representations were false.

49.     Consumers including Plaintiff reasonably relied on Defendant's label and advertising claims as described herein such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

50.     In the alternative, because of its deceptive and false labelling and advertising statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

51.     Consumers including Plaintiff especially rely on label and advertising claims made by food product manufacturers such as Nectar, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

52.     Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

**CLASS ACTION ALLEGATIONS**

53.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers nationwide who purchased the Products within four years prior to the filing of this Complaint.

54.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

55.     Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

56.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

57.     **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed nationally.

58.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b.   Whether a reasonable consumer would understand Defendant's "All Natural" and "no artificial ingredients" claims, and the associated advertising claims described herein, to indicate that the Products contained only natural flavorings and ingredients, and reasonably relied upon that representation;

c.   Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d.   Whether Defendant breached an express warranty;

e.   the proper amount of damages;

f.   the proper scope of injunctive relief; and

g.   the proper amount of attorneys' fees.

59.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

60.   In short, these common questions of fact and law predominate over questions that affect only individual Class members.

61.   **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

62.   Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar

economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

63.    There are no defenses available to Defendant that are unique to the named Plaintiff.

64.    **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

65.    Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

66.    **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons

a.   the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b.   the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c.   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

67.   Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

68.   Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant would like to purchase the Products and other products produced by Defendant in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the deceptions regarding flavoring found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

69.   **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

70.   Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***

71.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

72.     Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

73.     The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

74.     The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

75.     As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the flavoring representations that were made by Defendant on the labels of its Products and elsewhere.

76.     Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

    a.   Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

    b.   Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

    c.   Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

    d.   Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e.   Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

77.   By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

78.   Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so.  Plaintiff sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

79.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

80.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

81.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

82.   Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the flavoring in the Products.

83.   Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

84.    Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

85.    Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

86.    Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

87.    Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

88.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS WARRANTY

89.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

90.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were "All Natural" and contained "no artificial ingredients."

91.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the

Products would conform to those affirmations of fact, representations, promises, and descriptions.

92.     The Products do not conform to the express warranty that the Products were "All Natural," because they contain ingredients that are unnatural and synthetic, *i.e.*, DL malic acid.

93.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "UNFAIR" CONDUCT**

73.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative. This claim is pleaded in the alternative in the event that discovery reveals that Plaintiff has an inadequate legal remedy.

74.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

75.     Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

76.     Defendant's business practices, as alleged herein, are "unfair" because it makes false representations concerning, and fails to disclose accurately, the synthetic flavoring used in the Products.

77.     As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

78.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

79.     Defendant publicly disseminated untrue or misleading representations regarding the flavoring label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

80.     Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq.*

**COUNT 5**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq.* — "FRAUDULENT" CONDUCT**

81.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative. This claim is pleaded in the alternative in the event that discovery reveals that Plaintiff has an inadequate legal remedy.

82.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

83.     Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq.*

84.     Defendant's business practices, as alleged herein, are "fraudulent" because it makes false representations concerning, and fails to disclose accurately, the synthetic flavoring used in the Products.

85.   As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

86.   Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

87.   Defendant publicly disseminated untrue or misleading representations regarding the flavoring label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

88.   Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq.*

## COUNT 6
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "UNLAWFUL" CONDUCT

89.   Plaintiff reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative. This claim is pleaded in the alternative in the event that discovery reveals that Plaintiff has an inadequate legal remedy.

90.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

91.   Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq.*

92.    Defendant's business practices, as alleged herein, are "unlawful" because it makes false representations concerning, and fails to disclose accurately, the synthetic flavoring used in the Products.

93.    As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities she would not otherwise have spent or conducted.

94.    Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

95.    Defendant publicly disseminated untrue or misleading representations regarding the flavoring label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

96.    Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 7**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *et seq*.**

97.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative. This claim is pleaded in the alternative in the event that discovery reveals that Plaintiff has an inadequate legal remedy.

98.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

99.    Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

100.    Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

101.    Defendant's advertisements and labelling representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

102.    At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq.*

103.    Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq.*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

a.    Certifying the Class;

b.    Declaring that Defendant violated the statutes cited herein and/or was unjustly enriched and/or breached an express warranty;

c.    Awarding actual and other damages as permitted by law or equity;

d.    Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

f.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

1    g.   Such other relief as the Court may deem just and proper.

2    TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

3                              Respectfully submitted,

4

5                              /s/ *Charles C. Weller*
                               Charles C. Weller (Cal. SBN: 207034)
6                              Attorney for Plaintiff

7                              CHARLES C. WELLER, APC
                               11412 Corley Court
8                              San Diego, California 92126
                               Tel: 858.414.7465
9                              Fax: 858.300.5137

10                             September 15, 2023

CLASS ACTION COMPLAINT